IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROCHEAL LEWIS,

         Plaintiff,

     v.

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

         Defendant.

CIVIL ACTION FILE NO.

1:15-CV-01483-WSD-CMS

## FINAL REPORT AND RECOMMENDATION

On October 21, 2013, Plaintiff Rocheal Lewis ("Plaintiff") protectively filed an application for supplemental security income ("SSI"), alleging that she became disabled on November 1, 2008. (Tr. 227-35). The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (Tr. 127, 144). On September 15, 2014, Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 38-73). The ALJ issued an unfavorable decision on December 19, 2014, denying Plaintiff's SSI claim. (Tr. 12-27). Plaintiff requested review of the decision by the Appeals Council ("AC"). The AC denied review on March 3, 2015, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). This case is now ripe for judicial review, under 42 U.S.C. § 405(g).

For the reasons discussed below, I **RECOMMEND** that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings not inconsistent with this Report and Recommendation.

## I.   SEQUENTIAL EVALUATION PROCESS

Under the regulations promulgated by the Commissioner, a reviewer must follow a five-step sequential analysis when evaluating a disability claim.   20 C.F.R. § 404.1520(a).  This analysis is as follows:

1. The ALJ first determines whether the claimant is currently working; if so, the claim is denied.

2. The ALJ determines solely on the basis of the medical evidence whether the claimed impairment is severe; if it is not, the claim is denied.

3. The ALJ decides, again, only using medical evidence, whether the impairment equals or exceeds in severity certain impairments described in the Commissioner's Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.

4. The ALJ considers whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claim is denied.

5. The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work within the economy.  If the claimant is able to do other work, the

2

ALJ finds that the claimant is not disabled.  If the claimant cannot make an adjustment to other work and meets the duration requirement, the ALJ will find that the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

## II.    STANDARD OF REVIEW

This court's role in reviewing the factual determinations of the Commissioner is limited.  Gibson v. Heckler, 779 F.2d 619, 622 (11th Cir. 1986).  In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the Commissioner.  Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court's only role is to determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982).  "Substantial evidence" means such "relevant evidence as a reasonable person might accept as adequate to support a conclusion."  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Substantial evidence is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, substantial evidence is not present if the ALJ "does not have before him sufficient facts on which to make an informed decision."  Ford v. Sec'y

3

of Health and Human Servs., 659 F.2d 66, 69 (5th Cir. 1981).  Failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed -- or that substantial evidence exists -- mandates a reversal.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   BACKGROUND FACTS

Plaintiff was 58 years old at the time of the ALJ's decision.  (Tr. 25, 27, 227).  Plaintiff has a twelfth-grade education (Tr. 267) and past work experience as a companion.  (Tr. 44, 70).  Plaintiff alleges disability due to depression, panic attacks, and post traumatic stress disorder ("PTSD").  (Tr. 266).  Plaintiff claims that she stopped working in November 2008 "because of [her] condition(s)."  (Id.).  A claimant cannot receive SSI for any period prior to the month in which she filed her application.  See 20 C.F.R. §§ 416.330, 416.335.  Accordingly, the relevant period for deciding Plaintiff's SSI claim is the month in which she filed her SSI application (October 2013) through the date of the ALJ's decision.  See id.

Plaintiff's brief sets forth in great detail the medical and mental health treatment that Plaintiff received from 2005 through 2014 from various providers in Atlanta, Alabama, Ohio, and then back in Atlanta.  The Commissioner has not disputed

4

Plaintiff's recap of her medical history.  Rather than repeat all of Plaintiff's medical history here, I will briefly summarize the facts most relevant to Plaintiff's claim.

Plaintiff has a sporadic, intermittent work record, a long history of homelessness and mental health issues, and a history of drug and alcohol abuse, in sustained remission.  Her persistent symptoms have included anxiety, irritability, mood swings, depression, sleep problems, chest pain, panic attacks, shortness of breath, a productive cough, old rib fractures, and PTSD.  During clinical interviews and mental status exams, she has reported a history of sexual abuse by her stepfather, a family history of alcohol dependence and mental health issues, physical abuse by her mother, domestic abuse by her husband (from whom she is separated), and being raped in 2000 by a stranger wielding a gun and a machete.  (Tr. 757, 764).  Plaintiff's diagnoses have included major depressive disorder (mild to moderate); PTSD; anxiety disorder, not otherwise specified ("NOS"); panic disorder without agoraphobia; alcohol dependence in full sustained remission; cocaine abuse; flat feet; and personality disorder, NOS.  (Tr. 93, 318, 343, 435, 444, 766).

The medical records show that in September 2012, Plaintiff was seen at the Center for Families and Children in Cleveland, Ohio.  (Tr. 104).  Plaintiff reported an increase in mood swings and irritability, and that insomnia was still a problem.

(Tr. 102).  She also complained of nightmares, feeling anxious, flashbacks, depression, crying spells, panic attacks, chest pains, and not wanting to get dressed.   (Tr. 104). The psychological evaluation section of the medical records from September 2012 indicates that Plaintiff met the criteria for diagnoses of PTSD, major depressive disorder, and panic attacks (panic disorder without agoraphobia). (Tr. 108-09). During her clinical interview, Plaintiff reported that she was unemployed, and was interested in working, but stated that she was "[tr]ying to get SSI so does not want to work to interfere with this." (Tr. 107).  She reported that she was raped by a stranger she met at a club when she was in her late 20's, but "was paid for it."  (Tr. 104).  She also reported having served in the military and that she was currently receiving VA benefits. (Tr. 107).

She returned for follow-up visits in October and November 2012, with complaints of an increase in her mood swings, irritability and insomnia.  She reported being compliant with the medication that she had been prescribed (Celexa), but stated that it did not seem to be helping as much as before.  (Tr. 100-02).  She also complained of feeling "overwhelmed" and "like sometimes she can't go on."  (Tr. 102).

At the administrative hearing, Plaintiff testified that she was discharged from the military during basic training because of her feet.  She denied receiving VA benefits,

and testified that the military has apparently lost all record of her service and the honorable discharge that she claims she was granted.  (Tr. 46-48).  Plaintiff further testified that she had not used cocaine since 2009.  (Tr. 51).  However, on January 20, 2013, Plaintiff sought treatment at the emergency department of Grady Hospital with complaints of a persistent productive cough and a history of bronchitis.  (Tr. 625).  She reported that she had used cocaine the previous evening, and her last use prior to that time was two months before that.  (Tr. 631).  She was admitted to the hospital for three days for evaluation and sputum tests given a recent positive tuberculosis skin test that she received while staying at the Gateway homeless shelter.  Active TB was ruled out, but Plaintiff was referred to the county health department for treatment of latent TB. (Tr. 628-29).

Plaintiff was seen again at Grady in February 2013 for continued coughing and shortness of breath.  She reported a 40-year history of cigarette use, smoking 1-3 packs of cigarettes per day.  (Tr. 725).  She was treated for bronchitis and discharged with a prescription for Azithromycin, an antibiotic.  (Tr. 728).

In connection with Plaintiff's application for SSI benefits, the SSA directed Plaintiff to undergo two consultative psychological evaluations.  The first evaluation was conducted by Anne B. Moore, Psy.D. on April 16, 2013.  (Tr. 89).  The evaluation

included a clinical interview, a mental status examination, intellectual and performance testing, and a review of prior records.  Plaintiff's complaints included depression, anxiety, PTSD, and flat feet.  (Tr. 89).  During the interview portion of the evaluation, Plaintiff reported chronically poor stress tolerance and difficulty maintaining employment because "she was unable to calm down."  (Tr. 89).  In Dr. Moore's written report, under "Social History," Dr. Moore noted Plaintiff's reports of physical and sexual abuse by her mother and stepfather, and physical abuse by her husband.  (Tr. 89-90).  Under "Work History," Plaintiff reported that she had served in the Army for three years doing administrative tasks and was honorably discharged in 1977.  (Tr. 90).  She reported working on an assembly line at GenAir in the 1970s, but stated that she had to leave that job after she tried to flush a coworker's head down the toilet.  (Tr. 90).  Plaintiff told Dr. Moore that after the Army, she worked at a series of entry level jobs mostly in the fast food industry.  Plaintiff reported that she left her employment with Subway in 2010 after complaining that she was doing more work than others.  Thereafter, she had no formal income, but reported receiving food stamps in the amount of $200 per month.

As far as Plaintiff's past mental health history, Plaintiff told Dr. Moore that she first had depressive, anxious symptoms as a teenager and overdosed twice at ages 16

and 18.  Her depression was exacerbated by her high intake of alcohol in her twenties and thirties.  She denied psychiatric hospitalizations, but reported that she received mental health outpatient services as part of a research study in 2010 and in 2012 at the Center for Families & Children in Cleveland, Ohio.  (Tr. 90-91).

Plaintiff reported that her daily activities included eating breakfast, watching game shows, doing small chores, reading her Bible, and resting.  She often skipped showering for several days, especially if she was not leaving the house.  She reported that she was able to shop for groceries, but sometimes lacked the energy to prepare meals, so the food would go bad.  She completed chores every couple of days.  At some point Plaintiff had taken up knitting, but she reported that she had no longer knitted.  She reported historically having poor social relationships.  She said that her sole current contact was a friend that she lives with.

On testing, Plaintiff's full scale IQ score was 72 and appeared to be valid.  Plaintiff's concentration was average to poor; her remote memory was average, and her recent memory was mildly to moderately compromised.  There were no reported or observed psychotic symptoms.  Her insight and judgment were average to poor.  She was fully oriented, and her thought process was logical and goal directed.  (Tr. 91).  Plaintiff was able to understand and recall all instructions and complete all subtests.

Her attention, concentration, and effort appeared adequate.  Dr. Moore noted that all of Plaintiff's clinical information had internal consistency.  Dr. Moore further noted that Plaintiff's depressive mood and low stress tolerance were evidenced by her inconsistent work history, decreased productivity, and frustrated behaviors during her interview and testing.  (Tr. 92).

Under "Occupational Conclusions," Dr. Moore opined that Plaintiff's ability to understand and remember simple and detailed instructions was mildly to moderately compromised.  Her ability to interact with coworkers, supervisors and the public was moderately to markedly compromised, based on Plaintiff's reported attempt to put a coworker's head in a toilet in the '70s, her report that she accused others of doing less than herself, and her report that she has only one friend and mostly remains preoccupied and alone.  (Tr. 93).  Dr. Moore rated Plaintiff's ability to sustain attention and remain productive as moderately compromised.  Dr. Moore supported her opinion by noting that Plaintiff "procrastinates doing tasks such as cooking and no longer attempts knitting."  (Id.).  Dr. Moore rated Plaintiff's ability to adapt to normal work stressors as markedly compromised, and noted that Plaintiff historically coped by drinking, but she now "disengages and withdraws."  (Id.).  Dr. Moore's diagnostic impressions were: (Axis I) major depressive disorder, recurrent moderate; PTSD, chronic, alcohol

dependence in full sustained remission; and (Axis II) personality disorder NOS.  (Id.).

Dr. Moore opined that Plaintiff's Axis I conditions were treatable, but her prognosis

was "marginal" due to Plaintiff's chronic issues and uncertain access to services.  (Id.).

On February 17, 2014, Plaintiff underwent a second consultative evaluation.  The

examination was conducted by Ifetayo Ojelade, Ph.D., and included a clinical interview

with the claimant, a collateral interview with Plaintiff's "significant other," Lakesha

Williams, a review of supplied case records, and a mental status examination.  (Tr. 763).

Dr. Ojelade noted Plaintiff's complaints of depression, panic attacks, PTSD, GERD,

and old rib fractures.  Plaintiff reported to Dr. Ojelade that she was currently

unemployed, and her last employment was in 1994 as a home healthcare aide.

(Tr. 764).  She denied any history of hospitalizations or ongoing mental health

treatment, except for an outpatient research study in 2010.  She denied currently taking

any medication.  Her supplied records noted previous diagnoses of major depressive

disorder, panic disorder, and PTSD.  (Tr. 764).

Plaintiff described her current symptoms as including anxiety, irritability,

persistent mood swings, insomnia, varying energy levels, and periodic crying spells.

She reported being molested by her stepfather and raped in 2000 by a stranger at gun

point wielding a machete.  She reported a history of angry outbursts and a tendency to

11

withdraw socially, persistent hypervigilance, and flashbacks.  Plaintiff's companion confirmed Plaintiff's symptoms, and noted that Plaintiff often refuses to bathe. (Tr. 764).

Plaintiff reported that her daily living activities included waking up, managing her daily hygiene, going to appointments, and eating out.  Plaintiff reported being able to independently bathe, talk on the telephone, drive, ride in a car, take the bus, walk short and long distances, manage her own money, pay bills, feed herself, and go to bed and the bathroom on time.  Plaintiff admitted that she lacked motivation for managing her personal hygiene, combing her hair, and putting on attractive clothing.  (Tr. 765).

Dr. Ojelade observed that Plaintiff's hygiene was "extremely poor," and she smelled "of smoke and limited recent bathing experiences." (Id.).  Her motor behavior during the mental status examination was marked by constant movements.  She was talkative, with good eye contact and sad mood.  Her demeanor was cooperative, and her thought processes were tangential.  Her attention and concentration skills were normal, and she could follow commands.  Dr. Ojelade opined that Plaintiff's ability to concentrate during the session was inconsistent with her reported abilities related to depressive symptoms. (Tr. 766).  Dr. Ojelade opined that Plaintiff's overall cognitive abilities appeared to be within the low/high average range as evidenced by her ability

to complete paperwork independently, follow his instructions, and provide appropriate responses during the interview. Dr. Ojelade found little evidence that Plaintiff exaggerated or magnified her symptoms during the interview. (Id.).

After reviewing Plaintiff's supplied medical records and considering her clinical presentation, Dr. Ojelade opined that Plaintiff appeared to be experiencing mild to moderate symptoms associated with PTSD, depression, and trauma-related stressors associated with a complex history of sexual and physical abuse. His DSM-5 diagnostic impressions were major depressive disorder, mild, and PTSD. (Tr. 766).

Dr. Ojelade opined that Plaintiff demonstrated an ability to understand and remember simple and detailed instructions, and her responses during the interview suggested that she has the ability to sustain attention over time. However, he stated that her prognosis was "poor unless trauma-related mental health treatment is sought." (Tr. 767). Dr. Ojelade opined that, "Overall, she appears to be incapable to adapt to stressors that can result from the demands of being in a work environment and daily functioning. To her strength, she is able to maintain positive social interactions," and "appears to be capable of handling her own finances." (Id.).

In February and March 2014, non-examining state agency medical consultants reviewed Plaintiff's evidence of record, including the psychological evaluations by

13

Drs. Moore and Ojelade, and concluded that Plaintiff's mental health impairments produced moderate functional limitations across her activities of daily living, social functioning, and concentration, persistence, or pace. (Tr. 111-126, 128-143). The consultants concluded that Plaintiff is capable of performing simple work tasks, that she would work best in a low-stress and relatively isolated work environment, and that contact with the public should be limited. (Tr. 122-23, 136-40).

Between February 2013 and May 2014, Plaintiff received no medical treatment until she returned to Grady Hospital's emergency room on May 3, 2014 complaining again of a cough and upper respiratory infection. (Tr. 828). The hospital staff took her vital signs, examined her, and discharged her later that night. (Tr. 828-37).

## IV.   **THE ALJ'S DECISION**

After review of the entire record and testimony at the administrative hearing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 21, 2013, the date of Plaintiff's SSI application. (Tr. 14, Finding No. 1). The ALJ found that Plaintiff had the following severe impairments: depressive disorder; history of post-traumatic stress disorder; history of cocaine abuse; and remote history of alcohol abuse. (Id., Finding No. 2). The ALJ concluded that Plaintiff's history of polysubstance abuse disorders did not impact Plaintiff's ability to perform the basic

14

work activities delineated in the residual functional capacity ("RFC") set forth in his decision, and therefore, Plaintiff's drug and alcohol use were not material to the ALJ's decision.  (Id.).

As Finding No. 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), including Listings 12.04, 12.06, and 12.09.  (Tr. 15).  The ALJ found that Plaintiff had moderate difficulties with regard to activities of daily living, social functioning, and concentration, persistence, or pace.  (Tr. 15).  He further found that she had experienced no episodes of decompensation of extended duration.  Because  Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked limitation" and "repeated" episodes of decompensation, each of extended duration, the ALJ determined that the "paragraph B" criteria were not satisfied.  (Tr. 16).  The ALJ further determined that the evidence failed to establish the presence of "paragraph C" criteria. (Id.).

After consideration of the record, the ALJ found that Plaintiff provided inconsistent testimony regarding portions of her work history, participation in a research study,  and past drug use, finding Plaintiff to be not fully credible.  (Tr. 20, 21, 22).  The

15

ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff is unable to climb ropes, ladders, or scaffolds.  She cannot have concentrated exposures to hazards.  She is able to perform simple work tasks of skill levels one and two.  She can perform work in low stress jobs, which are those jobs that require few changes in the workplace, occasional, simple decision-making, and no work on high-speed assembly lines.  Plaintiff can have occasional, superficial contacts with the general public and coworkers.  (Tr. 16, Finding No. 4).

At step four, the ALJ found that Plaintiff could not perform her past relevant work.  (Tr. 25, Finding No. 5).

At step five, based vocational expert testimony and the Medical-Vocational Guidelines and the DOT, the ALJ found that there were a significant number of other jobs in the national economy that Plaintiff could perform.  (Tr. 26, Finding No. 9).  The ALJ therefore found that Plaintiff was not disabled, pursuant to 20 C.F.R. § 416.920(g), from the date Plaintiff filed her application through the date of the decision.  (Tr. 26-27, Finding No. 10).

As noted earlier, the AC denied review of Plaintiff's SSI claim on March 3, 2015, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).

AO 72A
(Rev.8/82)

## V.     <u>**DISCUSSION**</u>

As in all Social Security disability cases, Plaintiff bears the burden of establishing the existence of a disability.  <u>See</u> <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1571 (11th Cir. 1990); <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).  In this case, Plaintiff raises four issues on appeal:  (1) whether the ALJ's decision to afford "no weight" to certain portions of Dr. Moore's opinions is supported by substantial evidence; (2) whether the ALJ erred by not giving proper weight to the consultative examiners' opinions; (3) whether the ALJ's RFC assessment is supported by substantial evidence; and (4) whether the ALJ erred by substituting his own opinion for the opinions of the consultative examiners.

17

### A.   The ALJ's Basis for Discounting Portions of the Consultative Examiners' Opinions was Erroneous

As noted above, one-time consultative examiner Anne B. Moore, Psy.D., evaluated Plaintiff on April 16, 2013.  (Tr. 756).  The evaluation included a clinical interview, a mental status examination, intellectual and performance testing, and a review of prior records.  Dr. Moore found that Plaintiff's concentration was average to poor, and her recent memory was mildly to moderately compromised.  Under "Brief Clinical Summary and Occupational Conclusions," Dr. Moore opined that Plaintiff's ability to understand and remember simple and detailed instructions was "[m]ildly to moderately compromised," and her ability to sustain attention and to remain productive was "[m]oderately compromised."  (Tr. 760).  The ALJ gave those opinions "some weight" because they were "generally supported in the long-term record," as demonstrated by Plaintiff's ability to attend to self-care, make medical appointments, shop, help her friend, manage money, and take public transportation despite Plaintiff's lack of comprehensive mental health treatment.  (Tr. 22).

Dr. Moore further opined that Plaintiff's ability to interact with others (co-workers, supervisors, and the public) was "[m]oderately to markedly compromised," Plaintiff's ability to adapt to normal work stressors was  "[m]arkedly compromised,"

18

and her prognosis was "[m]arginal." (Tr. 760). The ALJ stated that he afforded "no weight" to these opinions for the following reasons:

> The undersigned has given this portion of Dr. Moore's opinions no weight, **for Dr. Moore wrote that she largely relied on the claimant's own statements in coming to these conclusions.** The claimant has demonstrated a propensity to embellish her symptoms across the record to support her disability claim. In addition, she was dishonest during the hearing. Thus, Dr. Moore relied on exaggerated statements in drawing these conclusions.

(Tr. 22-23) (emphasis added).

As Plaintiff correctly points out -- and the Commissioner does not dispute – nowhere in Dr. Moore's report does she state that she "largely relied on [Plaintiff's] own statements in coming to [her] conclusions." (See Tr. at 22, 756-761). The ALJ's stated basis for rejecting Dr. Moore's opinions with regard to Plaintiff's ability to interact with others and adapt to normal work stressors is plainly erroneous and without evidentiary support.

The Commissioner argues that even if the ALJ's statement mischaracterized Dr. Moore's report (which it undoubtably did), the explanations that Dr. Moore provided in her report for each discredited opinion show that her opinions were in fact based on Plaintiff's own statements. (Doc. 12, Comm'r's Br., at 10, citing Tr. 93). This

19

argument, however, does not address the fact that the ALJ credited some of Dr. Moore's occupational conclusions, but not others. The ALJ's decision provides no explanation; given the ALJ's reasoning, it is not clear why the ALJ did not reject all of Dr. Moore's opinions.

In any event, I find that the ALJ erred by substituting his own opinion for that of the consulting psychologist. As courts in this circuit and elsewhere have noted, "Clinical psychologists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment." See, e.g., Matthews v. Barnhart, 347 F. Supp. 2d 1093, 1101 (M.D. Ala. 2003). Dr. Moore's report demonstrates that in addition to her clinical interview of Plaintiff, she conducted extensive testing, including the Wechsler Adult Intelligence Scale-IV (WAIS-IV), Wide Range Achievement Test-4 (WRAT-4), Bender Gestalt Visual-Motor Test, and reviewed prior medical records and an SSA adult function report. (Tr. 756). Dr. Moore used her professional judgment to interpret the results of the tests that she administered and the records that she reviewed. Dr. Moore also used professional judgment in making behavioral observations and performing a mental status examination of Plaintiff. (Tr. 758). Dr. Moore observed that during her three-hour evaluation, Plaintiff was "not psychologically minded and became emotional and did not engage in problem

20

solving activities." (Tr. 758). Dr. Moore noted that Plaintiff's presentation was internally consistent, and her conduct, including non-verbal behaviors and self-scolding, "reinforced her negative mood." (Tr. 758). Dr. Moore opined that Plaintiff's "depressive mood and low stress tolerance was evidenced by her inconsistent work history, decreased productivity, and frustrated behaviors during her interview and testing." (Tr. 759). Dr. Moore further opined that Plaintiff's clinical information had internal consistency and her cognitive testing appeared to be valid. Her diagnoses of major depressive disorder, recurrent, moderate, and chronic PTSD are fully consistent with Plaintiff's prior and subsequent diagnoses by other health care providers. Dr. Moore's observations make clear that she was exercising professional judgment and not relying solely on Plaintiff's subjective statements. The ALJ erred by rejecting Dr. Moore's opinions based on the ALJ's erroneous assumption that Dr. Moore wrote that she "relied on [Plaintiff's] exaggerated statements in drawing [her] conclusions."

Dr. Moore's opinion with regard to Plaintiff's restricted ability to adapt to normal work stressors was fully consistent with and supported by Dr. Ojelade's opinion that Plaintiff "appears to be incapable to adapt to stressors that can result from the demands of being in a work environment and daily functioning." (Tr. 767). Dr. Ojelade was the only other examining consultative psychologist to conduct a psychological evaluation

21

of Plaintiff. Both psychologists found Plaintiff's presentation to be consistent and valid. Dr. Ojelade found "little evidence that the claimant exaggerated or magnified her symptoms during the interview." (Tr. 766). There is no evidence in the record from a treating or examining physician that contradicts the findings of the two psychologists who examined the Plaintiff. Yet, like with Dr. Moore's opinion, the ALJ refused to credit Dr. Ojelade's opinion as to Plaintiff's work ability based on the ALJ's assumption that Plaintiff exaggerated her symptoms during the course of her evaluation with Dr. Ojelade. (Tr. 23). Here again, the ALJ impermissibly substituted his "medical opinion" for that of the consultative examiner, Dr. Ojelade. See Bennett v. Barnhart, 288 F. Supp. 2d 1246, 1251 (N.D. Ala. 2003) (concluding that the ALJ's refusal to credit the opinions of two consultative examiners based upon his own diagnostic impression was "impermissible" in light of the fact that there was no medical evidence of record contradicting the examiners' findings); see also Raia v. Barnhart, 318 F. Supp. 2d 1096, 1101-02 (N.D. Ala. 2004) (holding that the ALJ failed to follow the uncontradicted medical opinions of the claimant's treating physicians and impermissibly substituted his "medical opinion" for that of the treating physician).

The ALJ further explained that he gave no weight to Dr. Ojelade's opinion about the Plaintiff's ability to adapt to stressors on the basis that the record "reveals that the

22

claimant **does fine** with regard to daily activities, social functioning, and concentration in the absence of mental health treatment." (Tr. 23) (emphasis added). However, this finding is in direct conflict with the ALJ's earlier findings that Plaintiff had "moderate" difficulties and restrictions with regard to activities of daily living, social functioning, and concentration, persistence or pace. (Tr. 15). The undersigned concludes that the ALJ's justifications for rejecting the findings of the only two consultative psychologists in the record are not supported by substantial evidence.

Further confusing matters is the ALJ's statement that he accorded "some weight" to the opinions of the non-examining state agency consultants on the basis that their opinions were "generally consistent" with "the examining psychologist opinion of record given the most weight" (i.e., Dr. Ojelade). (Tr. 25). The non-examining state agency consultants opined that Plaintiff had moderate limitations in activities of daily living, social functioning and concentration, persistence or pace, but Plaintiff could perform work involving simple tasks in a low stress environment with limited public contact. (Tr. 24). As Plaintiff notes, the ALJ actually gave the state agency consultants' opinions full weight, as the ALJ adopted those exact limitations in his RFC determination, finding that Plaintiff could perform simple tasks in low stress jobs with only occasional contact with the general public and coworkers. (Tr. 16). In this circuit,

however, "[t]he opinions of nonexamining, reviewing physicians,... when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted); Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

The ALJ may reject any medical opinion if the evidence supports a contrary finding. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam). In this case, the only opinions that indicated that Plaintiff could meet the mental RFC requirements to perform medium work were those of the non-examining state agency consultants. Their opinions were entitled to little weight, however, and cannot serve as substantial evidence. Sharfarz, 825 F.2d at 280.

The ALJ's concerns about Plaintiff's inconsistent statements are not to be taken lightly. However, the ALJ may not simply substitute his judgment for that of the experts. Ultimately, it is not apparent from the record what evidence the ALJ relied on in reaching his ultimate decision that Plaintiff is not disabled. As the Commissioner acknowledges, the ALJ clearly misquoted Dr. Moore's report when the ALJ said that Dr. Moore wrote that she largely relied on the claimant's own "exaggerated statements" of her symptoms in coming to her conclusions. (Tr. 22-23). The ALJ also implicitly rejected on the same or similar basis the opinion of Dr. Ojelade, only other consultative

24

examiner's opinion about Plaintiff's work abilities.  <u>See</u> SSR 85-15, 1985 WL 56857, at *4 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.").  I note that Dr. Ojelade specifically addressed Plaintiff's credibility and found that she was not exaggerating her symptoms.  (Tr. 766) ("There was little evidence that the claimant exaggerated or magnified her symptoms during the interview.  Claimant appeared sincere in her presentation and her report was consistent throughout the interview.")

Courts in this circuit have repeatedly held that the Commissioner's fifth-step burden cannot be met by a lack of evidence, but instead must be supported by the RFC assessment of a treating or examining physician. <u>See, e.g.</u>, <u>Murphy v. Astrue</u>, No. 8:06-cv-1654-T-TBM, 2008 WL 126592, at *4-5 (M.D. Fla. Jan. 10, 2008); <u>Doss v. Astrue</u>, No. CA-07-0375-C, 2007 WL 4570551, at *3 (S.D. Ala. Dec. 20, 2007).  Such an

AO 72A
(Rev.8/82)

assessment is particularly warranted where, as here, the ALJ has rejected significant portions of the only mental RFC assessments in the record.  Because this record contains no other mental RFC assessment other than the ones completed by Drs. Moore and Ojelade, there is simply no basis upon which this Court can find that the ALJ's RFC determination is supported by substantial evidence.  There is no evidence whatsoever that establishes that Plaintiff can perform the mental requirements of medium work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere conjecture.  Id.  The undersigned concludes, therefore, that the ALJ failed to establish his fifth step burden of proving that the claimant was capable of performing other work.

For the reasons stated, I RECOMMEND that this case be REVERSED and REMANDED for further development of the record regarding the extent of the Plaintiff's mental impairment(s), if any, and their effects on her ability to do basic work activities.  20 C. F. R. § 404.1521(b).

26

### B.     Plaintiff's Other Arguments

Plaintiff raises additional related arguments, including, *inter alia*, that the ALJ erred by failing to properly weigh all opinion evidence, that the ALJ's RFC is not supported by substantial evidence, and the ALJ substituted his opinion for the opinions of the medical experts.  Because this case is due to be remanded for at least one of the reasons discussed above, the analysis of the ALJ may change.  Therefore, I do not find it necessary at this stage of the review process to discuss Plaintiff's other arguments. On remand, Plaintiff's other arguments should also be considered.

### V.   <u>CONCLUSION</u>

For the foregoing reasons, I **RECOMMEND** that the Commissioner's decision be **REVERSED** under sentence four of 42 U.S.C. § 405(g) and the case  **REMANDED** to the Commissioner for additional proceedings not inconsistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**, this 6th day of June, 2016.

_____
**CATHERINE M. SALINAS**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)